EMR:RAS
F. #2023R00527

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                     Docket No. <u>23-CR-516 (KAM)</u>

CHRISTOPHER TERRANOVA,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S
<u>MOTION TO DISMSS</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Rachel A. Shanies
Assistant U.S. Attorney
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT………………………………………………………………………..1

STATEMENT OF FACTS………………………………………………………………………………2

ARGUMENT…………………..……………………………………….……………………6

    I.       The Legal Standard ........................................................................................7

    II.     Statutory and Historical Background of Section 2251 ...................................8

    III.    Congress's Authority to Regulate Section 2251(e) Under the Commerce Clause ......10

        A.  The Use of Facilities of Interstate Commerce .......................................11

        B.  Effect on Interstate Commerce ..............................................................15

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Gonzales v. Raich, 545 U.S. 1 (2005) ............................................................................ 7

Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519 (2012)................................. 14

Proyect v. United States, 101 F.3d 11 (2d Cir. 1996)............................................... 19

Sabri v. United States, 541 U.S. 600 (2004)............................................................... 8

Taylor v. United States, 579 U.S. 301 (2016) .......................................................... 18

United States v. Bailey, 227 F.3d 792 (7th Cir. 2000) ........................................... 18

United States v. Buculei, 262 F.3d 322 (4th Cir. 2001) ............................. 12, 15, 16

United States v. Curcio, 759 F.2d 237 (2d Cir. 1985)..................................... 17, 19

United States v. D'Amelio, 683 F.3d 412 (2d Cir. 2021)................................. 12, 14

United States v. Davila, 461 F.3d 298 (2d Cir. 2006) ..................................... 17, 18

United States v. Decastro, 682 F.3d 160 (2d Cir. 2012)........................................ 14

United States v. Esch, 832 F.2d 531 (8th Cir. 1987) .............................................. 12

United States v. Faris, 583 F.3d 756 (11th Cir. 2009)........................................... 14

United States v. Feola, 420 U.S. 671 (1975) ........................................................... 13

United States v. Giordano, 442 F.3d 30 (2d Cir. 2006)............................. 11, 12, 14

United States v. Holston, 343 F.3d 83 (2d Cir. 2003) ................................... passim

United States v. Jannotti, 673 F.2d 578 (3d Cir. 1982) ................................... 13, 18

United States v. Klopf, 423 F.3d 1228 (11th Cir. 2005) ........................................ 17

United States v. Lopez, 514 U.S. 549 (1995) ........................... 7, 10, 11, 12, 15

United States v. McGriff, 287 F. App'x 916 (2d Cir. 2008) .................................. 15

United States v. Morales-de Jesus, 372 F.3d 6 (1st Cir. 2004)........................ 14, 19

United States v. Moran, 57 F.4th 977 (11th Cir. 2023) ......................................... 12

United States v. Morrison, 529 U.S. 598 (2000) ............................................... 7, 18

United States v. Park, 938 F.3d 354 (D.C. Cir. 2019) ............................................ 13

United States v. Polouizzi, 697 F. Supp. 2d 381 (E.D.N.Y. 2010)............................................ 8

United States v. Salerno, 481 U.S. 739 (1987) .................................................... 8, 14

United States v. Vargas, 338 F. App'x 67 (2d Cir. 2009) ...................................... 17

United States v. Zhen Guan, 535 F. App'x 47 (2d Cir. 2013)......................................... 16, 18

**STATUTES**

18 U.S.C. § 2251 ............................................................................................... *passim*

18 U.S.C. § 2425 .............................................................................................. 11, 12

18 U.S.C. §§ 2252 ................................................................................................ 8, 9

Pub. L. No. 95–225 .................................................................................................. 8

Pub. L. No. 98–292 .................................................................................................. 9

**OTHER AUTHORITIES**

1978 U.S.C.C.A.N. 44, 1977 WL 9660 ................................................................ 8, 9

1984 U.S.C.C.A.N. 492, 1983 WL 25391 ............................................................... 9

PRELIMINARY STATEMENT

The defendant is charged in a six-count indictment with sexually exploiting, attempting to sexually exploit, and enticing and coercing minor boys, in violation of Title 18, United States Code, Sections 2251(a), 2251(e), and 2422(b).[1]  (ECF No. 29).  The charges are based on the defendant's use of internet-based applications and cellphones to contact four minor boys to engage them in sexual conversations online in an effort to entice the minor victims to engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct for the defendant.  In addition, the defendant engaged in hands-on sex acts with two of his minor victims.

On June 28, 2024, the defendant filed a motion to dismiss the indictment, on the basis that Section 2251(e), attempted sexual exploitation of a child, is unconstitutional on its face and as applied to the defendant because it exceeds Congress's authority under the Commerce Clause.  (ECF No. 24, the "Motion" or "Def. Mot.").  As detailed below, because Congress has the authority to regulate the use of facilities of interstate commerce, including the use of the internet and telephones, and because the charged conduct affects interstate commerce, the defendant's challenge to the constitutionality of the statute is wholly without merit and should be denied.

---

[1]     At the time the defendant filed his motion to dismiss on June 28, 2024, the defendant was charged in a four-count indictment charging three counts of attempted sexual exploitation of minors and one count of coercing and enticing a minor.  (ECF No. 1).  On July 9, 2024, a grand jury sitting in the Eastern District of New York charged the defendant with two additional offenses relating to a fourth victim identified in the Superseding Indictment as John Doe 1.  The newly charged offenses include sexual exploitation of John Doe 1 and coercion and enticement of John Doe 1.

<u>STATEMENT OF FACTS</u>

The defendant is a now-suspended Staten Island police officer who, at times, used his role as a law enforcement officer to gain access to and abuse and exploit or attempt to exploit minor children.  The defendant's most recent conduct involved the child identified as John Doe 4 in the superseding indictment (John Doe 3 in the original indictment).  John Doe 4, who resided in Staten Island, New York, was the victim of a robbery in March 2023.  John Doe 4's parents knew the defendant from their neighborhood and encountered the defendant at the precinct where they went to report the robbery.  New York City Police Department ("NYPD") records indicate that the defendant accessed the robbery complaint, which contained John Doe 4's cellphone number, through the NYPD system.  The same day the defendant accessed the complaint, the defendant contacted John Doe 4, who was 15 years old at the time, using the defendant's personal cellphone.  The defendant wrote, "Hey [John Doe 4], it's Chris Terranova the cop you met at the 121 that day with mom , i just wanted to reach out to see if you were doing ok after the incident, I hate seeing these things happen to good Guys like yourself."  In the following messages, the defendant inquired about the investigation, referred to his role as a police officer, asked John Doe 4 if he had any interest in the police department or its youth programs, and wrote things like, "If [sic] here too if you ever want to talk[.] I been through a lot myself over the years so just know that little bro."  The defendant then asked John Doe 4 to add him on "snap" or "the gram," apparently referring to Snapchat and Instagram.

Once the defendant had moved John Doe 4 to the more secure platform of Snapchat, he began asking John Doe 4 inappropriate questions, including whether John Doe 4 masturbated, what type of pornography John Doe 4 liked to watch, whether John Doe 4

measured his penis, and the color of John Doe 4's pubic hair.  The defendant also advised John Doe 4 of the size of the defendant's penis when "it's hard."  Throughout this conversation, the defendant reassured John Doe 4 that it was "super safe" to talk to him and that they "have trust about EVERYTHING and ANYTHING."  The defendant further wrote, "I thought we would show each others to bond (just the pubes) which we both don't have lol Or an underwear pic" and "Can I show you quick before bed ? Just one It will be fun and brotherly."  The defendant then sent John Doe 4 a photograph of his pubic area and a portion of his penis, after which the defendant wrote, "see it's nothing. Your turn."  When John Doe 4 did not immediately respond, the defendant wrote, "Then we'll get some sleep[.]  If not all good, just was curious and little thing in life bond us bros[.]  Are you okay?  Say something please[.]  I'm sorry[.]  Can you please respond? Or send something too lol."  For this conduct, the defendant is charged with attempting to sexually exploit John Doe 4 between March and May 2023.

Shortly before his attempts to sexually exploit John Doe 4, the defendant engaged in similar conduct with the then-12-year-old John Doe 3 (John Doe 2 in the original indictment).  John Doe 3, who resided in Staten Island, New York, met the defendant when the defendant was providing a law enforcement presence at the football field where John Doe 3 played youth football.  The defendant connected with John Doe 3 using Snapchat and began asking John Doe 3 inappropriate questions, including asking how John Doe 3's "schmeat" was, apparently referring to John Doe 3's genitals, if it was growing, and if John Doe 3 was "playing with it."  The defendant also asked John Doe 3 multiple times for photographs of John Doe 3's pubic hair, penis, and buttocks.   For this conduct, the defendant

is charged with attempting to sexually exploit John Doe 3 between September 2022 and April 2023.

        In 2022, the defendant communicated with another minor male, John Doe 2 (John Doe 1 in the original indictment), who was then 15 years old.  John Doe 2 also resided in Staten Island, New York.  The defendant was a friend of John Doe 2's family member.  As with John Does 3 and 4, the defendant connected with John Doe 2 using social media; in this instance Snapchat and Instagram.  The defendant used these internet-based applications to ask John Doe 2 questions about his sexual behavior and his genitals.  These communications escalated to an incident in which the defendant, using an internet-based phone application, offered to pick up John Doe 2 from a birthday party and drive him home.  The defendant then picked up John Doe 2 and drove him to an isolated area where the defendant began to kiss John Doe 2.  Ultimately, the encounter escalated to the defendant using his hands to force John Doe 2 to perform oral sex on the defendant.  Subsequent to this incident the defendant continued to message John Doe 2 over Snapchat and, among other things, request explicit pictures of John Doe 2.  Specifically, the defendant asked for photographs of John Doe 2's penis and buttocks.  Some of the messages the defendant sent to John Doe 2 on Snapchat include: "You can still send me some surprises here and there that won't hurt[.]  I love your little cute cock" and "I got hard as fuck thinking about you (take it as a compliment)."  For this conduct, the defendant is charged with attempting to sexually exploit John Doe 2 between February and October 2022, and enticing and coercing John Doe 2 to engage in sexual activity.

        The superseding indictment adds charges with respect to a new victim, John Doe 1, who resided in Texas.  Following the defendant's arrest, law enforcement conducted a

search of his residence and found materials in a locked safe relating to John Doe 1, including photographs of John Doe 1, details about John Doe 1's likes, dislikes, religion, and family, as well as letters between the defendant and John Doe 1, which were dated from when John Doe 1 was 15 and 16 years old that reference meeting in person, "experimenting," and "what [they] do in bed." The defendant met John Doe 1 through social media and communicated with John Doe 1 via text message, Snapchat, and Facetime. Electronic communications between the defendant and John Doe 1 date back to when John Doe 1 was 15 years old and reference sexual acts between the two. John Doe 1 sent the defendant sexually explicit images over Snapchat and engaged in live streamed sexual acts while on Facetime with the defendant. The defendant met John Doe 1 multiple times in person in Texas and engaged in sex acts with the minor child. The defendant even purchased a second home in Texas that was a few minutes away from John Doe 1's residence at the time. For this conduct, the defendant is charged in the superseding indictment with sexually exploiting John Doe 1 between December 2019 and September 2022, and with enticing and coercing John Doe 1 to engage in sexual activity.[2]

        The defendant was first arrested in connection with some of this conduct by the NYPD on or about May 23, 2023 on charges of disseminating indecent material to

---

[2]      While Counts One and Five of the superseding indictment were not charged at the time the defendant filed his June 28, 2024 motion to dismiss, the arguments set forth in the defendant's motion do not appear to implicate those additional charges. The defendant's argument addresses only the charges for violations of Section 2251(e), attempted sexual exploitation of a child. He made no arguments regarding the charge of coercion and enticement in the initial indictment and therefore presumably would make no argument with respect to the additional coercion and enticement charge (Count Five). Additionally, the defendant's argument is focused on the question of whether an attempt, rather than a completed offense, of child exploitation falls within federal jurisdiction when the children are in the same jurisdiction as the defendant. Count One involves a child residing out-of-state as well as completed conduct.

minors and endangering the welfare of a child.  The defendant was re-arrested on or about

July 18, 2023 on additional charges relating to sexual misconduct and dissemination of

indecent material to minors.  On December 13, 2023, the defendant was charged in a federal

indictment in connection with his attempted exploitation of John Does 2 through 4.  On July

9, 2024, a grand jury sitting in the Eastern District of New York returned a superseding

indictment, which charges the defendant for his conduct with respect to all four John Does.

<u>ARGUMENT</u>

The defendant moves to dismiss Counts One through Three of the indictment

(now Counts Two through Four of the superseding indictment) on the ground that Congress

exceeded its authority in enacting Section 2251(e), attempted sexual exploitation of a child.

He is wrong.  Section 2251(e) makes it a crime to, among other things, attempt to violate

Section 2251(a).  Section 2251(a) states:

> Any person who employs, uses, persuades, induces, entices, or
> coerces any minor to engage in, or who has a minor assist any
> other person to engage in, or who transports any minor in or
> affecting interstate or foreign commerce, or in any Territory or
> Possession of the United States, with the intent that such minor
> engage in, any sexually explicit conduct for the purpose of
> producing any visual depiction of such conduct or for the
> purpose of transmitting a live visual depiction of such conduct,
> shall be punished as provided under subsection (e), [1] if such
> person knows or has reason to know that such visual depiction
> will be transported or transmitted using any means or facility of
> interstate or foreign commerce or in or affecting interstate or
> foreign commerce or mailed, [2] if that visual depiction was
> produced or transmitted using materials that have been mailed,
> shipped, or transported in or affecting interstate or foreign
> commerce by any means, including by computer, or [3] if such
> visual depiction has actually been transported or transmitted
> using any means or facility of interstate or foreign commerce or
> in or affecting interstate or foreign commerce or mailed.

Section 2251(a); <u>see also</u> <u>United States v. Holston</u>, 343 F.3d 83, 85 (2d Cir. 2003).

6

As set forth in detail below, Congress has authority to regulate attempted sexual exploitation of a child both because the charged conduct anticipates the use (and in this case involves the use) of a facility of interstate commerce and because the conduct affects interstate commerce.

I.      Legal Standard

The Constitution creates a Federal Government of enumerated powers.  See Art. I, § 8.  One such enumerated power is the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  Art. I, § 8, cl. 3.  The Supreme Court has recognized "three broad categories of activity that Congress may regulate under its commerce power."  United States v. Lopez, 514 U.S. 549, 558 (1995).  They include (1) regulating the use of the channels of interstate commerce, (2) regulating and protecting the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities, and (3) regulating activities that substantially affect interstate commerce.  Id. at 558-59.

In evaluating whether Congress possessed constitutional authority to pass a statute, the task before the Court is "a modest one."  Gonzales v. Raich, 545 U.S. 1, 22 (2005).  This Court "need not determine" whether the factual predicate for exercising an enumerated power actually exists, "but only whether a 'rational basis' exists for so concluding."  Id. (quoting Lopez, 514 U.S. at 557).  Notably, the Supreme Court has cautioned that "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."  United States v. Morrison, 529 U.S. 598, 607 (2000).  There is, in other words, a "presumption of constitutionality."  Id.  "A facial

challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  United States v. Salerno, 481 U.S. 739, 745 (1987).

With respect to the defendant's challenge that Section 2251(e) is unconstitutional as applied to him, (Def. Mot. at 13), "the question is whether the statute would be unconstitutional if applied literally to the facts of the case."  United States v. Polouizzi, 697 F. Supp. 2d 381, 387 (E.D.N.Y. 2010).   If "the acts charged against [the defendant] himself [a]re well within the limits of legitimate congressional concern," the fact that it might not "be enforce[able] against someone else whose behavior would be outside the scope of Congress's Article I authority" is irrelevant.  Sabri v. United States, 541 U.S. 600, 609 (2004).

II.     Statutory and Historical Background of Section 2251

Section 2251 was enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977 (the "Act"), Pub. L. No. 95–225, § 2(a), 92 Stat. 7, 8 (1978), (codified at 18 U.S.C. §§ 2251 et seq.).   The Act is a broad regulatory scheme that prohibits, in addition to the production of child pornography, the receipt, transmission, and possession of child pornography.  See 18 U.S.C. §§ 2252, 2252A; Holston, 343 F.3d at 85.  "When passed in 1978, the Act was supported by congressional findings that 'child pornography . . . ha[s] become [a] highly organized, multimillion dollar industr[y] that operate[s] on a nationwide scale,' and that 'the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce.'"  Holston, 343 F.3d at 85 (quoting S. Rep. 95–438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 40, 42–43, available at 1977 WL 9660).  Congress also

found that "because of the vast potential profits in child pornography"—its low production and reproduction costs and high retail prices—the industry was "growing at a very rapid rate."  Id. at 85 (quoting S. Rep. 95–438, at 5 (1977), reprinted in 1978 U.S.C.C.A.N. 44, available at 1977 WL 9660).

      The Act was amended in 1984 to eliminate the requirement that the production, receipt, transportation, and distribution of child pornography be for a commercial purpose.  See Child Protection Act of 1984, Pub. L. No. 98–292, 98 Stat. 204; see also H.R. Rep. 98–536, at 10 (1983), reprinted in 1984 U.S.C.C.A.N. 492, 501, available at 1983 WL 25391.  This change followed Congress's conclusion that, within the unique realities of the child pornography market, much of the production and trafficking was non-commercial. See, e.g., id. at 2, 1984 U.S.C.C.A.N. at 493 ("Many of the individuals who distribute materials covered by 18 U.S.C. Section 2252 do so by gift or exchange without any commercial motive ...."); id. at 17, 1984 U.S.C.C.A.N. at 508 ("The bulk of the child pornography traffic is non-commercial."; "Generally, the domestic material is of the 'homemade' variety, while the imported material is produced by commercial dealers."); see also id. at 16, 1984 U.S.C.C.A.N. at 507 ("Most often, our investigations have resulted in the identification of collectors, some of whom sell their material while others do not.  Those who do not sell their material often loan or trade collections with others who share their interest.").  "The House Report on the amendment indicated that because much of the pornographic material that concerned Congress was 'homemade' and the subject of barter and informal exchanges through underground distribution networks, a statutory regime that required a commercial purpose left a significant enforcement hole that the 1984 amendment was intended to fill."  Holston, 343 F.3d at 85.

III.     Congress's Authority to Regulate Section 2251(e) Under the Commerce Clause

The Supreme Court in Lopez, 514 U.S. at 558-59, set out three categories of

conduct that Congress may regulate pursuant to the Interstate Commerce Clause: (i) use of

the channels of interstate commerce, (ii) instrumentalities of interstate commerce, or persons

or things in interstate commerce, or (iii) activities that substantially affect interstate

commerce.  The different jurisdictional prongs set forth in Section 2251(a)[3] implicate

different categories in the Lopez test.  For example, the second Section 2251(a) prong

prohibits instances in which a visual depiction is produced or transmitted using materials that

have been mailed, shipped, or transported in or affecting interstate or foreign commerce,"

implicating the third Lopez category (activities that substantially affect interstate commerce),

while the first Section 2251(a) prong prohibits, in part, instances in which a "person knows

or has reason to know that such visual depiction will be transported or transmitted using any

means or facility of interstate or foreign commerce," implicating the second Lopez category

(instrumentalities of interstate commerce).

The defendant's conduct falls within Congress's authority under the

Commerce Clause for two independent reasons: (1) the defendant used and attempted to use

---

[3]     The jurisdictional prongs in Section 2251(a) include: "[1] if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, [2] if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or [3] if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."  18 U.S.C. § 2251(a).

interstate facilities in carrying out the offense; and (2) the attempted violations of Section

2251(a) affect interstate commerce.[4]

    A.   <u>The Use of Facilities of Interstate Commerce</u>

    Section 2251(e) is constitutional as applied to the defendant because the

defendant used a facility of interstate commerce in carrying out his crime.  "'Both the

---

[4]     When the defendant argues that Congress lacks authority to regulate the conduct criminalized by Section 2251(e) because the conduct does not affect interstate commerce, he appears to assume that the only <u>Lopez</u> category relevant to Section 2251(a) is the third—activities that substantially affect interstate commerce.  This is incorrect based on the plain language of Section 2251(a).  In <u>Holston</u>, the defendant challenged the constitutionally of Section 2251(a) arguing that the "materials-in-commerce jurisdictional prong, to reach child pornography created for personal use and which does not cross state lines, is an unconstitutional exercise of the Commerce Clause power because the jurisdictional prong is too attenuated from the conduct sought to be regulated." <u>Holston</u>, 343 F.3d at 84-85.  The Second Circuit rejected that challenge and found Section 2251(a) constitutional.  <u>Id.</u> at 91.  Notably, Holston's conduct—unlike the defendant's—was <u>not</u> alleged to involve the use of the internet or any other facility of interstate or foreign commerce.  <u>Id.</u> at 85 ("Appellant was prosecuted on the basis of the second [§ 2251(a)] jurisdictional prong and the Government has not alleged that either of the other jurisdictional bases applies.").  By contrast, the defendant attempted to employ, use, persuade, induce, entice or coerce his minor victims to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct knowing or having reason to know that any such visual depiction would be transported or transmitted using a means or facility of interstate or foreign commerce – here cellular telephones and internet-based applications (i.e., Snapchat).  Importantly, even though the Second Circuit evaluated Section 2251(a) in the context of the third <u>Lopez</u> category in <u>Holston</u>, 343 F.3d at 88, it in no way limited Congress's authority under the Commerce Clause to that <u>Lopez</u> category.  That was simply the relevant category for the conduct at issue in that specific case.

    The defendant's "attempt to bring [the line of cases addressing the third <u>Lopez</u> category] to bear on" Section 2251(a) in this case "overlooks the fact that" Section 2251(a), "which explicitly proscribes" using any means or facility of interstate or foreign commerce "to specified ends, is clearly founded on the second type of Commerce Clause power categorized in <u>Lopez</u>, that is, the power to regulate and protect the instrumentalities of interstate commerce 'even though the threat may only come from intrastate activities.'" <u>United States v. Giordano</u>, 442 F.3d 30, 41 (2d Cir. 2006) (quoting <u>Lopez</u>, 514 U.S. at 558) (addressing a similar argument with respect to 18 U.S.C. § 2425).  While the defendant's argument is incorrect and attempted violations of Section 2251(a) do substantially affect interstate commerce, the use or attempted use of interstate facilities provides a clear and independent basis for federal jurisdiction that the defendant all but ignores in his motion.

internet and telephone are, of course, facilities of interstate commerce.'" United States v. D'Amelio, 683 F.3d 412, 415, 422-23 (2d Cir. 2021) (quoting the district court's order and concluding that whether the defendant used the internet or telephone made no difference under the relevant statute as both are facilities or means of interstate commerce); see also Giordano, 442 F.3d at 39, 41. Moreover, "[i]t is well established that" when Congress legislates pursuant to the second Lopez category—instrumentalities of interstate commerce—it may regulate even purely intrastate use of those instrumentalities. Giordano, 442 F.3d at 41. Accordingly, conduct like that presented in this case, which involves the defendant's use of an internet-based application to communicate intrastate with his victims in an effort to obtain sexually explicit images that would be transmitted through that same internet-based application, "presents no constitutional difficulties." Id. at 41-42, 48 (holding that "18 U.S.C. § 2425 reaches intrastate use of a telephone for the specified unlawful purposes and that application of the statute to such activity does not exceed Congress's power under the Commerce Clause").

The fact that images were not ultimately transferred using the facility of interstate commerce is of no moment. See United States v. Esch, 832 F.2d 531, 540 (8th Cir. 1987) (comparing Section 2251(a) to the wire fraud statute and finding that federal jurisdiction is created where the mailing of the image is foreseeable); see also United States v. Moran, 57 F.4th 977, 978 (11th Cir. 2023) (finding in connection with a conviction for attempting to sexually exploit a child that "§ 2251(a)'s interstate-nexus element does not require that a defendant know ex ante that his plot will succeed—only (as relevant here) that if it succeeds, the forbidden images will travel in interstate commerce"); United States v. Buculei, 262 F.3d 322, 330 (4th Cir. 2001) ("If Congress has the power, under the

Commerce Clause, to regulate the completed product, it can certainly regulate the attempted production of child pornography."). "Congress can constitutionally reach inchoate offenses because these offenses pose a potential threat to interstate commerce; the existence of such a threat ties 'the proscribed conduct to the area of federal concern delineated by the statute." United States v. Jannotti, 673 F.2d 578, 592 (3d Cir. 1982) (quoting United States v. Feola, 420 U.S. 671, 695 (1975)). The defendant's argument to the contrary asks the Court to establish new law that would overturn countless convictions, not just in connection with attempted child sexual exploitation offenses, but any attempt or conspiracy to commit a crime where the jurisdiction for the substantive offense is based on the use of facilities of interstate commerce. Such request for sweeping change to the law and the far reaching implications of such change is not supported by the law and is contrary to the authorities cited herein.

Notably, the defendant's conduct involved the completed use of a facility of interstate commerce and not just an attempt or conspiracy to use such facility. Namely, the defendant used the internet-based application Snapchat to communicate with each minor victim and also used his cellular telephone to communicate with some of his victims.[5] There

---

[5] Even for the completed substantive offense, the government does not have to prove that a visual depiction actually moved in interstate commerce (e.g. via the internet). It is enough that the defendant had reason to know that any such visual depiction would move in interstate commerce. See 18 U.S.C. § 2251(a) (providing federal jurisdiction where the perpetrator "has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce," as distinguished from instances in which "such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce"). Here, the defendant had reason to know that any visual depiction would move in interstate commerce, meeting the Section 2251(a) jurisdictional prong, because he requested the images be sent via Snapchat. Moreover, Congress need not articulate the basis for the exercise of its power in the statute as long as the Court can discern a basis for the exercise of that power. United States v. Park, 938 F.3d 354, 363 (D.C. Cir. 2019)

can be no question that Congress has authority to regulate such uses of facilities of interstate commerce.  D'Amelio, 683 F.3d at 415; Giordano, 442 F.3d at 41; see also United States v. Faris, 583 F.3d 756, 758-59 (11th Cir. 2009) (finding Congress has authority under the Commerce Clause to regulate a defendant's use of the internet to attempt to coerce or entice a minor to engage in sexual activity even where the person with whom the defendant communicated was an undercover law enforcement officer).

Where a challenge to the constitutionality of a statute as applied to the defendant fails, so too must the facial challenge to the statute fail.  For a facial challenge to a statute to prevail, the defendant must show that there are no set of circumstances under which the statute would be valid.  Salerno, 481 U.S. at 745.  Because the defendant's circumstances present a clear case in which the statute is valid (the defendant actively used facilities of interstate commerce in his effort to attempt to sexually exploit children), the defendant cannot meet the burden of showing that there are no circumstances under which the statute would be valid.  Accordingly, the defendant's facial challenge to Section 2251(e) fails.  See United States v. Decastro, 682 F.3d 160, 163 (2d Cir. 2012) ("It follows that a defendant who fails to demonstrate that a challenged law is unconstitutional as applied to him has necessarily failed to state a facial challenge, which requires him to establish that no set of

---

("A court must be able to discern a basis for Congress's exercise of an enumerated power, but that does not mean that a 'law must be struck down because Congress used the wrong labels' or failed to identify the source of its power." (quoting Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 570 (2012))); see also United States v. Morales-de Jesus, 372 F.3d 6, 14 (1st Cir. 2004) ("[T]he disconnect between the interstate commerce activity described in the jurisdictional element of § 2251(a) and the interstate commerce activity (the national market for child pornography) that prompted Congress to criminalize the production of child pornography is not fatal to the constitutionality of the statute.").

circumstances exists under which the statute would be valid." (internal quotation marks and alterations omitted)).

    B.  Effect on Interstate Commerce

Because Section 2251(e) is clearly constitutional based on the second Lopez category because it anticipates the use of a facility of interstate commerce and, in this case, involved the actual use of a facility of interstate commerce, the Court need not decide whether Section 2251(e) also substantially affects interstate commerce. United States v. McGriff, 287 F. App'x 916, 918 (2d Cir. 2008) (summary order) ("Under our caselaw, a showing that a regulated activity substantially affects interstate commerce is unnecessary when Congress regulates activity involving an instrumentality or facility of interstate commerce."). However, the conduct with which the defendant is charged also falls squarely within Congress's authority based on its potential effect on interstate commerce.

As a preliminary matter, the defining element of a completed act of sexual exploitation is not the creation of an image. It is the child's engagement in sexually explicit conduct for the purpose of creating an image, regardless of whether the image is ultimately created. For example, the completed offense can involve live streaming of the sexual act or instances in which a recording device malfunctioned. See 18 U.S.C. § 2251(a) (prohibiting the transmission of a live visual depiction of sexually explicit conduct); see also Buculei, 262 F.3d at 327-28 (upholding a Section 2251(a) conviction where the defendant attempted to videorecord himself engaged in sexual conduct with a minor, but the tape ran out right before the victim was fully undressed). Accordingly, the distinction the defendant attempts to draw between the completed offense and the attempted offense—the existence of a sexually explicit image—is based on a misapprehension of the conduct required by the statute.

The Fourth Circuit considered Congress's power under the Commerce Clause in the context of a Section 2251(a) offense where the defendant attempted to videorecord himself engaging in sexual conduct with a minor victim, but the tape cut off before the minor victim was fully undressed. Buculei, 262 F.3d at 326. The recording thus did not contain any sexually explicit material and no sexually explicit image was created. Id. at 327. The Fourth Circuit found that the defendant's "failure to create the visual depiction does not bolster his contention that the Constitution has been offended by his conviction." Id. at 330. The Fourth Circuit wrote that "Congress, in its wisdom, has rationally determined that eliminating such pernicious activity will reduce the enormous interstate market in child pornography," and further found that "[i]f Congress has the power, under the Commerce Clause, to regulate the completed product, it can certainly regulate the attempted production of child pornography." Buculei, 262 F.3d at 329-30.

There can be no dispute that completed sexual exploitation of a child substantially affects interstate commerce even where the conduct is wholly intrastate and non-commercial. See United States v. Zhen Guan, 535 F. App'x 47, 47 (2d Cir. 2013) (summary order) ("As we are satisfied that § 2251(a) lies within Congress's powers under the Commerce Clause, the fact that [the defendant] neither shipped the materials interstate nor intended to benefit commercially from his conduct is of no moment." (quoting Holston, 343 F.3d at 91)); Holston, 343 F.3d at 90-91 (finding that § 2251(a) lies within Congress's powers under the Commerce Clause even where the materials are not shipped interstate nor intended for commercial purposes). "[Section] 2251(a) was well supported by legislative findings documenting both the existence of an extensive national market in child pornography and that market's reliance on the instrumentalities of interstate commerce."

16

Holston, 343 F.3d at 89.  It follows logically that if the completed act lies within Congress's authority under the Commerce Clause, that an attempt to commit that same offense, which requires a defendant to take a substantial step towards an act that substantially affects interstate commerce, is also within Congress's purview.  This logical conclusion is well supported by binding authorities.

The Second Circuit has found that, "[i]t is well established that the Commerce Clause permits Congress to criminalize activity that threatens to affect interstate commerce, even if that threat does not materialize in every case.  Congress can constitutionally reach inchoate offenses because these offenses pose a potential threat to interstate commerce. . . ." United States v. Davila, 461 F.3d 298, 306 (2d Cir. 2006) (internal quotation marks omitted); see also id. at 305 ("Because the instant case involves a hoax anthrax mailing the proper inquiry . . . is whether commerce would have been affected if the letter had actually contained anthrax." (emphasis added)); United States v. Vargas, 338 F. App'x 67, 68-69 (2d Cir. 2009) (summary order) (finding that the fact that the defendant "could never have completed the robbery is of no moment" with respect to the Commerce Clause and reiterating that "the Hobbs Act's jurisdictional element, which is coextensive with the Commerce Clause, requires only that the defendant's conduct, if carried to fruition, have a de minimis effect on interstate commerce" (first emphasis added)); United States v. Klopf, 423 F.3d 1228, 1239 (11th Cir. 2005) (finding in an identity theft case that "[t]he defendant need have had only the intent to accomplish acts, which, if successful, would have affected interstate or foreign commerce."); United States v. Curcio, 759 F.2d 237, 241-42 (2d Cir. 1985) ("The effects on interstate commerce of the defendants' extortionate behavior need only be potential or subtle.  Moreover, the appellants were charged with attempted extortion,

17

and an actual effect need not be shown, only the possibility thereof." (internal quotation marks and citations omitted)); United States v. Bailey, 227 F.3d 792, 738 (7th Cir. 2000) ("Because Hobbs Act criminalizes attempts as well as completed crimes, the government need not even prove that interstate commerce was affected, only that there exists a 'realistic probability' of an effect on commerce."); Jannotti, 673 F.2d at 592 ("Convictions of [inchoate offenses of attempt and conspiracy to extort] have been sustained notwithstanding the absence of any evidence of an actual effect on interstate commerce.").  Moreover, in the context of attempted Hobbs Act robbery, the Supreme Court held that, "[a]s long as Congress may regulate the purely intrastate possession and sale of illegal drugs, Congress may criminalize the theft or attempted theft of those same drugs."  Taylor v. United States, 579 U.S. 301, 309 (2016).  By the same token, as long as Congress may regulate the purely intrastate possession or creation of child sex abuse material, Congress may criminalize the attempted creation of that same material.  The Supreme Court made no distinction between the completed crime as it relates to interstate commerce and an attempt.  Accordingly, Congress has authority to regulate attempted sexual exploitation of a child because such conduct "threatens to affect interstate commerce, even if that threat does not materialize."[6] Davila, 461 F.3d at 306.

---

[6] The defendant reviews the factors described in Morrison, 529 U.S. 598, which sets forth factors to consider in evaluating the existence of a substantial effect on commerce, in the context of an attempt as if the analysis for an attempt is independent of the analysis for the completed offense.  This is not correct.  There is no dispute that the completed offense of sexual exploitation of a child has a substantial effect on interstate commerce.  Zhen Guan, 535 F. App'x at 47; Holston, 343 F.3d at 90-91.  Further, Congress has authority to regulate inchoate offenses like attempt because such activity threatens to affect interstate commerce, even if that threat does not materialize in every case.  Davila, 461 F.3d at 306.  Accordingly, an analysis of the Morrison factors in the context of attempt is not independent of the analysis in the context of the completed offense.  Rather, because an analysis of the factors results in a finding that the

Based on the foregoing, the defendant's facial challenge to Section 2251(e) fails.  Moreover, "when Congress regulates a class of activities that substantially affect interstate commerce, 'the fact that certain intrastate activities within this class, such as growing marijuana solely for personal consumption, may not actually have a significant effect on interstate commerce is irrelevant.'  Moreover, 'the nexus to interstate commerce is determined by the class of activities regulated by the statute as a whole, not by the simple act for which an individual defendant is convicted.'"  Holston, 343 F.3d at 90-91 (quoting Proyect v. United States, 101 F.3d 11, 13-14 (2d Cir. 1996)) (internal alterations omitted) (finding § 2251(a) lies within Congress's power under the Commerce Clause).  Because the defendant's conduct falls within a class of activities that impacts interstate commerce, his as applied challenge must also fail.  See Morales-de Jesus, 372 F.3d at 17 (finding § 2251(a) constitutional as applied to the defendant where he produced visual depictions for his own gratification with no intent to purchase, trade, sell, or barter the materials because "[w]hen Congress regulates a class of activities that substantially affects interstate commerce, a defendant's claim that his personal activities did not affect interstate commerce fails if his activity is within that class").

---

completed offense affects interstate commerce, the same conclusion must be drawn with respect to an attempt because "an actual effect need not be shown, only the possibility thereof."  Curcio, 759 F.2d at 241-42.

CONCLUSION

For the reasons set forth above, the defendant's motion should be denied in its

entirety.

Dated:      Brooklyn, New York
            July 19, 2024

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        Attorney for Plaintiff
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                              By:    /s/ Rachel A. Shanies
                                     Rachel A. Shanies
                                     Assistant United States Attorney
                                     (718) 254-6140